IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| MANASSEH ROYDREGO SKINNER, | : |
| Plaintiff, | : |
| VS. | : |
| | :     **1 : 13-CV-44 (WLS)** |
| DR. DEREBAIL, | : |
| Defendant. | : |

**ORDER AND RECOMMENDATION**

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on March 21, 2013. (Doc. 1). Presently pending in this action are Defendant Derebail's Motion for Summary Judgment, and seven miscellaneous Motions filed by Plaintiff. (Docs. 12, 28, 29, 30, 31, 32, 37, 40, 41).

**Background**

Plaintiff alleges that Defendant Derebail, a doctor contracted to work at Dougherty County Jail ("DCJ"), was deliberately indifferent to Plaintiff's serious medical need. (Doc. 1). Plaintiff states that he was shot in the hand on August 26, 2012, and was treated at Phoebe North Hospital. His treating doctor allegedly told Plaintiff that he would need surgery and physical therapy. Plaintiff maintains that he was arrested the day after he was shot. Defendant allegedly refused to provide Plaintiff with the additional treatment Plaintiff needed, and as a result, Plaintiff contends that he suffers from "severe pain, numbness, and malfunctions" in his hand. (Doc. 1, p. 6).

*Motion for Summary Judgment (Doc. 41)*

Defendant filed his Motion for Summary Judgment on November 20, 2013. On November 21, 2013, the Court notified Plaintiff of the filing of Defendant's Motion for Summary Judgment, advised

him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order.  (Doc. 44).  Plaintiff filed responses to Defendant's Motion for Summary Judgment on December 18, 2013 and February 3, 2014.  (Docs. 46, 49).

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

materials - including the facts considered undisputed - show that the movant is entitled to it". Fed R. Civ. P. 56(e)(3).

## Discussion

It appears Plaintiff was a pretrial detainee at all relevant times, and as such, conditions of confinement imposed on him were governed by the Fourteenth Amendment Due Process Clause. *Andujar v. Rodriquez*, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007). "[T]he minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). Therefore, for the purposes of the undersigned's analysis of Plaintiff's allegations, the Court will apply the Eighth Amendment standard. *Id.*; *Vinson v. Clarke County, Ala.*, 10 F.Supp.2d 1282, 1293 (S.D. Ala., 1998).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order to show that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must prove that there is an "objectively serious medical need" and the "prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, a prisoner must show that the medical need poses a substantial risk of serious harm if left unattended. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds, by *Hope v. Pelzer*, 536 U.S. 730 (2002).

To establish that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must also show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351.  A prison official's subjective knowledge of a risk is a question of fact as to which the defendant "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2007) (emphasis in original) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

A serious medical need can also be established if there is a delay in treatment that worsens the condition.  *Hill*, 40 F.3d at 1188-1189.  However, deliberate indifference entails more than mere negligence, and must be more than a medical judgment call or an inadvertent failure to provide medical care.  *Estelle*, 429 U.S. at 106; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). Additionally, an inmate who receives adequate medical care, but disagrees with the mode or amount of treatment has not established deliberate indifference.  *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).

In asserting that he is entitled to summary judgment, Defendant has submitted his personal affidavit, and portions of Plaintiff's medical records. (Docs. 42-1, 42-3, 48-1).  Plaintiff has provided portions of his Dougherty County Jail file, which includes grievances and medical records, and Defendant's discovery responses.  (Doc. 46-3).  Plaintiff also provided statements from witnesses and an alleged affidavit; however, the documents were not sworn statements made under penalty of perjury, nor were the documents notarized.  (*See* Doc. 46-3). Additionally, neither Plaintiff's Responses to Defendant's Motion for Summary Judgment nor his Complaint were sworn statements made under penalty of perjury, nor were the documents notarized.  (*See* Docs. 1, 46, 49).  As such, Plaintiff has not provided evidence that can be properly considered to refute Defendant's summary judgment showing.

The properly considered evidence submitted by Defendant shows that Defendant provides physician services to prisoners at DCJ. (Doc. 42-1, Derebail Aff., ¶ 5). Defendant visits the jail once a week, and provides "treatment to patients who have been designated by the medical staff as in need of physician services." (*Id.* at ¶ 6).

Plaintiff was seen at the jail infirmary on August 28, 2012, complaining of a gunshot wound to his right hand. (*Id.* at ¶ 9; Doc. 42-3, p. 25). "Plaintiff was assessed by the medical staff and told that a referral would be made for Plaintiff to follow up with the orthopedist that treated him immediately following the gunshot wound." (Doc. 42-1, Derebail Aff., ¶ 9). The jail medical staff spoke with Dr. Robert Pilcher, Plaintiff's treating orthopedist, who told the staff that Plaintiff did not need any antibiotic therapy. (*Id.*; Doc. 42-3, p. 85). On August 31, 2012, Defendant "referred Plaintiff for off-site medical treatment with Dr. Nur Nurbhai", an orthopedic hand specialist board certified in orthopedic surgery and orthopedic hand surgery. (Docs. 42-1, Derebail Aff., ¶¶ 11-12; 42-3, p. 97).

Plaintiff was seen by Dr. Nurbhai on September 5, 2012. (Doc. 42-1, Derebail Aff., ¶ 12). "Dr. Nurbhai ordered x-rays and instructed the Plaintiff to use an ulnar gutter splint for his affected fingers." (*Id.* at ¶ 12; Doc. 42-3, pp. 97). "Dr. Nurbhai noted that Plaintiff had good alignment of his fractures per the x-ray and that the fractures were healing properly." (Docs. 42-1, Derebail Aff., ¶ 12; 42-3, p. 98). Plaintiff was prescribed Vicodin for pain management, and Dr. Nurbhai requested that Plaintiff return in two weeks for a follow-up appointment. (Docs. 42-1, Derebail Aff., ¶ 12; 42-3, p. 97). On September 11, 2012, Defendant referred "Plaintiff for off-site specialty service medical treatment with Dr. Nurbhai[;]" Plaintiff was seen by Dr. Nurhbai on September 19, 2012. (Docs. 42-1, Derebail Aff., ¶¶ 15-16; 42-3, p. 100). "Dr. Nurbhai ordered an x-ray and noted that the Plaintiff's fractures were healing well." (Doc. 42-1, Derebail Aff., ¶ 16).

Plaintiff submitted a Medical Request for pain medications for his right hand two days before his

follow-up appointment with Dr. Nurhbai.  (*Id.* at ¶ 17; Doc. 42-3, p. 29).  Plaintiff was seen by the jail medical staff on September 23, 2012.  (Docs. 42-1, Derebail Aff., ¶ 17; 42-3, p. 30).  "[T]he medical staff examined the Plaintiff and noted the Plaintiff's right hand was not swollen and that he was able to move his fingers without difficulty."  (Docs. 42-1, Derebail Aff., ¶ 17; 42-3, p. 86).  The medical staff ordered Ibuprofen 600 mg to be taken twice a day for seven days, as needed.  (Docs. 42-1, Derebail Aff., ¶ 17; 42-3, pp. 29, 74).  On September 27, 2012, Defendant reviewed the medical staffs' decision, and "agreed that it was the appropriate medical response to the Plaintiff's complaint."  (Doc. 42-1, Derebail Aff., ¶ 17). On that same date, Defendant treated Plaintiff for scabies, and "[a]t that time Plaintiff did not make any complaints to [Defendant] related to his right hand injury."  (Doc. 42-1, Derebail Aff., ¶ 18).

Defendant evaluated Plaintiff's hand and removed a suture on October 11, 2012.  (Docs. 42-1, Derebail Aff., ¶ 19; 42-3, p. 87).  Defendant noted that Plaintiff's "hand was healing well and that there was no sign of infection."  (Docs. 42-1, Derebail Aff., ¶ 19; 42-3, p. 87).  Plaintiff did not make any complaints regarding his hand injury to Defendant.  (Doc. 42-1, Derebail Aff., ¶ 19).  Plaintiff was seen again by Defendant on November 1, 2012.  (*Id.* at ¶ 21; Doc. 42-3, p. 87).  Defendant "noted that the Plaintiff's wound was healing well, and that the Plaintiff had some difficulty flexing his ring and little finger."  (Doc. 42-1, Derebail Aff., ¶ 21).  Defendant consulted with Dr. Nurbhai, and it was determined that Plaintiff would benefit from physical therapy.  (*Id.*).  Dr. Nurbhai ordered physical therapy for Plaintiff's hand on November 5.  (*Id.*; Doc. 42-3, p. 109).

Plaintiff received physical therapy on November 6, 13, 15, 20, 25, 27, and 29, and December 4 and 11 of 2012.  (Doc. 42-1, Derebail Aff., ¶ 22).  "During these treatments the Plaintiff reported a decrease in the swelling of his hand, and loosening of the scar tissue."  (*Id.*).  Plaintiff was discharged from physical therapy on December 11, 2012.  (*Id.*; Doc. 42-3, p. 110).  "At that time it was noted by

the physical therapist that Plaintiff was experiencing occasional pain and had successfully increased the flexibility of his fingers by loosening the scar tissue from the gunshot wound.  Further, the physical therapist noted that the Plaintiff made good improvement with flexibility and that Plaintiff needed to continue his home exercises for continued improvement." (Docs. 42-1, Derebail Aff., ¶ 22; 42-3, p. 110).

On November 25 and December 12 of 2012, Plaintiff submitted Medical Requests for an MRI to be performed on his right hand. (Docs. 42-1, Derebail Aff., ¶ 23; 42-3, pp. 33-34). The medical staff determined that an MRI was not needed given Plaintiff's progress in physical therapy. (Docs. 42-1, Derebail Aff., ¶ 23; 42-3, p. 34). Defendant was never advised of Plaintiff's requests for an MRI. (Doc. 42-1, Derebail Aff., ¶ 23).

Plaintiff made a request to see a physician due to several ailments, including hand pain and numbness on December 19, 2012, and on December 25, 2012 Plaintiff was seen by a nurse on the medical staff. (Docs. 42-1, Derebail Aff., ¶ 24; 42-3, p. 35). "The nurse noted some swelling to [Plaintiff's] right hand and a history of a gunshot wound to the right hand[;]" Plaintiff was also unable to make a fist. (Docs. 42-1, Derebail Aff., ¶ 24; 42-3, p. 88). Plaintiff was instructed to return to the infirmary if his condition worsened, and the nurse ordered pain management with medication. (Docs. 42-1, Derebail Aff., ¶ 24; 42-3, p. 88). Defendant reviewed the medical records two days later, and agreed with the course of treatment. (Doc. 42-1, Derebail Aff., ¶ 24).

Plaintiff was seen by a medical staff nurse on January 9, 2013, after Plaintiff filed a Medical Request on January 5, 2013. (Docs. 42-1, Derebail Aff., ¶ 26; 42-3, pp. 37, 88). The nurse noted Plaintiff complained of pain and numbness in his right hand, and was in no acute distress. (Docs. 42-1, Derebail Aff., ¶ 26; 42-3, p. 88). The nurse called Defendant, who prescribed Naprosyn 50 mg for pain management. (Doc. 42-1, Derebail Aff., ¶ 26). Defendant reviewed the medical records from this

treatment date, and agreed with the course of treatment.  (*Id.*).

Plaintiff was seen by the medical staff's physician's assistant on January 28, 2013, and the physician's assistant ordered Ibuprofen 400 mg twice daily as needed for fourteen days for Plaintiff's back and hand pain.  (Docs. 42-1, Derebail Aff., ¶ 27; 42-3, p. 89).  Defendant reviewed the medical record on January 31, 2013, and agreed with the treatment.  (Doc. 42-1, Derebail Aff., ¶ 27).  On that same day, Defendant examined Plaintiff's hand and "noted no tenderness, well healed bones in the right hand, no deformity in the right hand, and no vascular deficits in the right hand."  (*Id.* at ¶ 28; Doc. 42-3, p. 89).  Defendant "prescribed Neurontin, a drug used to treat neurological pain and to help treat the Plaintiff's complaints of numbness."  (Docs. 42-1, Derebail Aff., ¶ 28; 42-3, p. 113).

Plaintiff requested an x-ray of his hand on February 22, 2013.  (Doc. 42-3, p. 41).  Plaintiff was seen by the medical staff five days later.  (*Id.*; Doc. 42-1, Derebail Aff., ¶ 29).  "He was noted to have full range of motion in all extremities with some noticeable deformities noted from the gunshot wound."  (Docs. 42-1, Derebail Aff., ¶ 29; 42-3, p. 90).  "Plaintiff was prescribed Ibuprofen 600 mg twice a day as needed for fourteen days[.]"  (Docs. 42-1, Derebail Aff., ¶ 29; 42-3, p. 90).

On March 8, 2013, Plaintiff was seen for complaints of headaches, and stomach and chest pain, and Plaintiff had not taken his prescribed Neurontin and Ibuprofen on March 4, 6, or 8 of 2013.  (Docs. 42-1, Derebail Aff., ¶ 30; 42-3, pp. 44-47, 49).  The medical staff discussed the problem with Defendant; Defendant discontinued the Ibuprofen, and instructed the staff to tell Plaintiff that Defendant would see Plaintiff on Defendant's next visit to the jail.  (Docs. 42-1, Derebail Aff., ¶ 30; 42-3, pp. 90, 114).  Defendant treated Plaintiff on March 9, 2013.  (Docs. 42-1, Derebail Aff., ¶ 31; 42-3, p. 90). He discontinued Plaintiff's Ibuprofen prescription because it was upsetting Plaintiff's stomach, and prescribed Neurontin 200 mg to assist with Plaintiff's hand pain and numbness. (*Id.*; Doc. 42-3, p. 114).

Plaintiff was seen by a member of the medical staff for complaints of hand pain on March 31,

2013, after requesting to be seen on March 25.  (Docs. 42-1, Derebail Aff., ¶ 32; 42-3, pp. 51, 91).  The medical records show that Plaintiff was able to move his right hand and fingers, and circulation and sensation were present.  (Docs. 42-1, Derebail Aff., ¶ 32; 42-3, p. 91).  Plaintiff refused any medication offered to him.  (Docs. 42-1, Derebail Aff., ¶ 32; 42-3, p. 91).

Plaintiff refused medication and requested to be seen by the infirmary on April 10, 2013, and again requested to be seen on April 16, in part, for swelling and numbness in his hand.  (Docs. 42-1, Derebail Aff., ¶¶ 33-34; 42-3, pp. 54-57).  On April 18, Defendant performed a full history and physical on Plaintiff, and found that Plaintiff moved his fingers on his injured hand well, and that there was mild swelling in the hand.  (Docs. 42-1, Derebail Aff., ¶ 35; 42-3, pp. 91-92).  Defendant "noted that the capillary refill was normal, which indicates that hand was getting good blood flow."  (Doc. 42-1, Derebail Aff., ¶ 35).  Plaintiff again refused to take the medications prescribed to him.  (*Id.*).

Plaintiff requested to be seen by medical on May 19, 2013, as a result of pain and swelling in his hand.  (Doc. 42-3, p. 62).  Plaintiff was seen by the medical staff, and it was noted that Plaintiff was taking Neurontin and Fioricet for the pain and swelling.  (*Id.*; Doc. 42-1, Derebail Aff., ¶ 39).  Plaintiff was seen again on May 23, 2013 for complaints that his hand "sometimes" hurts and swells; he was told "that due to the nature of the injury he would live with hand pain for the duration of his life."  (Docs. 42-1, Derebail Aff., ¶ 41; 42-3, p. 93).  Plaintiff was also informed that he was already taking medications for the pain and swelling in his hand. (Docs. 42-1, Derebail Aff., ¶ 41; 42-3, p. 93).  Defendant reviewed the medical record, and agreed that the treatment was appropriate.  (Doc. 42-1, Derebail Aff., ¶ 41).

Plaintiff was seen by the medical staff on June 11, 2013, after requesting to be seen on the previous day.  (Docs. 42-1, Derebail Aff., ¶ 42; 42-3, p. 64).  A medical staff member requested that Defendant refill Plaintiff's prescriptions for Neurontin and Fioricet.  (Docs. 42-1, Derebail Aff., ¶ 42;

9

42-3, pp. 64).  Defendant did so two days later.  (Docs. 42-1, Derebail Aff., ¶ 42; 42-3, p. 83).

On June 24, 2013, Plaintiff requested to be seen by a neurologist concerning the numbness and pain in his hand, and requested x-rays be taken of his hand.  (Doc. 42-3, p. 66).  The next day, Plaintiff was evaluated by a member of the medical staff; an appointment was made for him to be seen by the nurse the following day.  (*Id.*; Doc. 42-1, Derebail Aff., ¶ 44).  Plaintiff told the nurse that he wanted an x-ray performed on his hand because he was still experiencing pain and numbness, and the medical staff informed "Plaintiff that he was going to always have some numbness and pain in his right hand due to the nature of his injury."  (Docs. 42-1, Derebail Aff., ¶ 44; 42-3, p. 94).

Plaintiff was seen by the medical staff on June 30, 2013.  (Doc. 42-1, Derebail Aff., ¶ 45).  The nursing staff progress notes indicate that Plaintiff reported he had been jumped by jail staff, and that his right hand, head, and left side were hurt in the altercation.  (*Id.*; Doc. 42-3, p. 69).  "Medical staff reported that there was no redness or swelling in the right hand."  (Doc. 42-1, Derebail Aff., ¶ 45).  Plaintiff was seen again on July 2, 2013, after filing a medical request the day before regarding, in part, swelling, pain, and numbness in his hand.  (*Id.* at ¶ 46).  Three days later, the physician's assistant noted that Plaintiff's hand was tender to palpation, and ordered x-rays and prescribed Ibuprofen 400 mg.  (*Id.* at ¶ 47; Doc. 42-3, pp. 95, 115).

A three view x-ray was obtained of Plaintiff's hand on July 8, 2013.  (Docs. 42-1, Derebail Aff., ¶ 48; 42-3, p. 117).  There was no acute fracture or dislocation, and there was "chronic appearing deformity and scalloping along the medial aspect of the fourth metacarpal head and lateral fifth metacarpal head probably related to the history of previous injury."  (Doc. 42-3, p. 117).  Defendant testified that the x-ray result "is consistent with a well headed (sic) fracture following a gunshot wound and does not indicate that surgical intervention is warranted, or required."  (Doc. 42-1, Derebail Aff., ¶ 48).  Defendant also testified that "[a]t no point in time did [he] believe that the Plaintiff was a candidate

for surgical intervention to help treat the Plaintiff's complaints of pain and numbness to his right hand." (*Id.* at ¶ 49). Further, Defendant "did not believe that [Plaintiff's] condition warranted administration of any additional medications or further radiological evaluation." (*Id.* at ¶ 54).

The undisputed medical records show that Plaintiff received adequate medical treatment for his hand injury. While housed at DCJ, Plaintiff treated with an orthopedic hand surgeon, received physical therapy for his injured hand, medications to treat the swelling and pain, and examinations with someone from the medical staff each time Plaintiff requested treatment. X-rays showed that Plaintiff's hand was healing well after the gunshot wound. Plaintiff was referred to a physical therapist, and was released after successfully completing nine physical therapy sessions and showing improvement in his hand. The evidence shows that Plaintiff was not denied medical treatment, but simply disagreed with the method and amount of treatment he received. Plaintiff has failed to refute the evidence showing that he received adequate care, and therefore has failed to show an Eighth Amendment violation. *See Waldrop v. Evans*, 871 F.2d 1030, 103 (11th Cir. 1989) ("when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (evidence showed that the plaintiff received "significant" medical care in jail, and while the plaintiff may have desired a different mode of treatment, the care provided did not rise to the level of deliberate indifference).

Additionally, the evidence fails to show that Defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [ ] (3) by conduct that [was] more than mere negligence." *Brown*, 387 F.3d at 1351. In Defendant's opinion, Plaintiff's hand injury did not pose a risk of serious harm. (Doc. 42-1, Derebail Aff., ¶ 53). Further, Defendant "did not believe that [Plaintiff's] condition warranted administration of any additional medications or further radiological evaluation." (Doc. 42-1, Derebail Aff., ¶ 54). The evidence fails to show that Defendant was aware of a risk of serious harm to

Plaintiff, and deliberately disregarded that risk.  Even if Defendant inadvertently failed to provide Plaintiff with medical care or acted negligently in failing to properly treat Plaintiff's hand injury, he is not liable under § 1983.  *See Estelle*, 429 U.S. at 106 (negligence or an inadvertent failure to provide medical care is not actionable under § 1983); *Murrel*, 615 F.2d at 310, n. 4.

As Plaintiff failed to provide the Court with evidence that refuted Defendant's showing that he was not deliberately indifferent to Plaintiff's allegedly serious medical need, no genuine issue of fact remains regarding Plaintiff's claim.  Thus, Plaintiff's claims cannot survive Defendant's Motion for Summary Judgment.

### Conclusion

Plaintiff has failed to rebut Defendant's summary judgment showing.  Therefore, it is the recommendation of the undersigned that Defendant's Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendation contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**ORDERS**

*Supplemental Complaint (Doc. 12)*

Plaintiff filed a document entitled "Supplemental Complaint", wherein he attempts to add new claims and defendants pursuant to Federal Rule of Civil Procedure 15(d). Plaintiff's new allegations relate to events that occurred after he filed his Complaint.

Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "Rule 15(d) is intended to bring a controversy up to date through the presentation of subsequent matters related to the claim presented in the original pleading." *Stoecklin v. U.S.*, 1997 WL 1039239, *1 (M.D. Fla., Sept. 19, 1997).

"A §1983 plaintiff may set forth only related claims in one civil rights complaint. He may not join unrelated claims and various defendants unless the claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.'" *Jackson v. Burnside*, 2010 WL 1691606, *2 (M.D. Ga., March 19, 2010) (quoting Fed.R.Civ.P. 20(a)).

In Plaintiff's Complaint, he alleges that Defendant and Dougherty County Jail supervisors were deliberately indifferent to Plaintiff's serious medical need regarding a gunshot wound to his hand. (Doc. 1). In his "Supplemental Complaint", Plaintiff complains of jail employees interfering with Plaintiff's legal mail and documents in retaliation for filing this lawsuit, and complains of inhumane and unhygienic prison conditions. (Doc. 12). Plaintiff has not shown how the newly asserted claims logically relate to the original Complaint. *See Cone Financial Group, Inc. v. Employers Ins. Co. of Wausau*, 2010 WL 4639295, *2 (M.D. Ga., Nov. 4, 2010) ("new claims may only be added pursuant to Rule 15(d) if the claims are adequately related to the originally stated claims"); *Skillern v. Georgia State Prison*, 2009

WL 4233417, *1 (S.D. Ga., Aug. 24, 2009) (finding the plaintiff's assertion that his claim of deliberate indifference was the nexus relating several other claims, including retaliation for filing the original complaint, to be without merit).

Furthermore, Plaintiff did not seek permission to file his "Supplemental Complaint". Pursuant to Rule 15(d), Plaintiff must have the permission of the Court to serve a supplemental pleading.

As the "Supplemental Complaint" does not arise out of the same events alleged in the original Complaint and as Plaintiff did not seek permission to file this "Supplemental Complaint", Plaintiff's "Supplemental Complaint" is hereby **DENIED.**

*Discovery Motions (Docs. 28, 32, 37, 40)*

On September 3, 2013, Plaintiff filed a Motion requesting permission to submit discovery documents. (Doc. 28). After Plaintiff filed this Motion, Plaintiff filed a Response to Defendant's Motion for Summary Judgment, wherein he, in fact, attached certain discovery documents. (Doc. 46). The Court has considered the discovery documents that were properly submitted to the Court. As such, Plaintiff's Motion for Permission to Submit Discovery Documents (Doc. 28) is **found to be moot**.

Plaintiff filed Motions to Compel on September 16, 2013 and October 16, 2013. (Docs. 32, 37). The discovery period began on June 11, 2013 and ended on October 11, 2013. (*See* Docs. 6, 15, 26). Plaintiff requests the Court order Defendant to produce "any and all inmate grievances filed against [Defendant] and medical within the past three years," Plaintiff's x-ray film from x-rays taken during his incarceration, and any civil lawsuits filed against Defendant within the last three years. (Docs. 32, 37).

Defendant filed Responses to Plaintiff's Motions, and stated that they responded to Plaintiff's discovery requests. (Doc. 35, 38). Defendant's counsel hand delivered a copy of Plaintiff's medical records and Defendant's discovery responses on August 12, 2013. (Doc. 35). After Plaintiff sent counsel a letter regarding the above-stated discovery disputes, counsel for Defendant hand delivered a

response addressing each issue on September 11, 2013.

Specifically, Defendant objected to the above stated requests based on relevancy and inadmissibility. Additionally, Defendant's counsel states that Defendant is not in possession or control of the actual x-ray film, as the x-rays were taken by a different doctor. Defendant has also not been given copies of all the grievances filed against him. Defendant states that the discovery materials provided to Plaintiff included a copy of the radiologist's report, and a copy of the grievance Plaintiff filed regarding the allegations contained in this case. Counsel for Defendant also state that they gave advice to Plaintiff concerning the appropriate third-party to serve with a request for production, and agreed to assist Plaintiff in obtaining the x-rays once Plaintiff made the proper non-party request.

The Court notes that Defendant responded to Plaintiff's discovery requests, and Plaintiff's letter regarding discovery disputes. Plaintiff has not shown that Defendant is in possession of any of the information Plaintiff seeks to obtain. *See* Fed. R. Civ. P. 34(a) (a party must produce documents in response to a request for production where those documents are "in the responding party's possession, custody, or control"). At most, Plaintiff makes conclusory statements that Defendant could easily obtain the documents Plaintiff requests. Plaintiff appears to be attempting to circumvent the appropriate discovery process (non-party request for production), and compel Defendant to do Plaintiff's discovery for him. Further, Plaintiff has received the case numbers for the civil suits which Defendant was involved in during the past three years from the Clerk of Court. (*See* Docket, Doc. 39). Accordingly, Plaintiff's Motions to Compel (Docs. 32, 37) are hereby **DENIED**.

Plaintiff also filed a Motion to Enlarge Discovery on November 13, 2013, wherein he requested the Court extend the time to complete discovery. (Doc. 40). The Court had previously extended the discovery period until October 11, 2013, at Plaintiff's request. (Doc. 26). At the time Plaintiff filed this Motion, the discovery period had been closed for one month. Plaintiff has provided only vague

statements regarding his need to have an additional discovery extension, and has provided no facts to show what relevant and useful information Plaintiff might obtain if he is allowed to engage in additional discovery. Therefore, Plaintiff's Motion to Enlarge Discovery is **DENIED**.

*Miscellaneous Motions (Docs. 29, 30, 31)*

Plaintiff filed a Motion for Physical Examination requesting that he be examined by a neurologist or an orthopedic surgeon. (Doc. 29). Plaintiff has failed to provide "good cause" showing the Court that a Court ordered physical examination is needed. *See* Fed.R.Civ.P. 35(a)(2)(A). Accordingly, Plaintiff's Motion for Physical Examination is **DENIED**.

On September 3, 2013, Plaintiff filed a "Motion to Order Defendant/Non-Defendant to Provide the Plaintiff with Stationery". (Doc. 30). Plaintiff states that he has had a difficult time obtaining "much needed" stationery, yet fails to provide any information regarding the circumstances surrounding his inability to obtain stationery. Plaintiff's "Motion to Order Defendant/Non-Defendant to Provide the Plaintiff with Stationery" is hereby **DENIED**.

Plaintiff has also requested that the Court order "Sheriff Kevin Sproul and his staff to permit [Plaintiff] to obtain legal assistance from fellow inmate Willie Sam Bivens[.]" (Doc. 31). Plaintiff does not cite to any authority, and the Court finds "no authority which would allow it to *compel* [Plaintiff's] custodian to give him access to a particular inmate for assistance and advice." *Crum v. Thomasville County Jail*, 2007 WL 2570781, *7 (M.D. Ga., Aug. 31, 2007) (internal citations omitted). Further, generally speaking, no right to counsel exists in § 1983 actions. *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); *Mekdeci v. Merrel Nat'l. Lab.*, 711 F.2d 1510, 1522 n.19 (11th Cir. 1983). Plaintiff has provided no factual support for his contention that counsel is necessary in this case. Accordingly, Plaintiff's Motion (Doc. 31) is hereby **DENIED**.

**SO ORDERED AND RECOMMENDED**, this 16th day of April, 2014.

                                                s/ ***THOMAS Q. LANGSTAFF***
                                                **UNITED STATES MAGISTRATE JUDGE**